GALLAGHER KANE AMAI
A Law Corporation

J. PATRICK GALLAGHER     3417-0
SKYLER G. CRUZ           9551-0
Topa Financial Center
745 Fort Street, Suite 1550
Honolulu, Hawaii 96813
Tel. No. (808) 531-2023

Attorneys for Plaintiff
GEMINI INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEMINI INSURANCE COMPANY, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> CONSTRX LTD., ) <br><br> Defendant. ) <br> _____ ) | CIVIL NO. _____ <br> (Contract) <br><br> PLAINTIFF GEMINI INSURANCE <br> COMPANY'S COMPLAINT FOR <br> DECLARATORY JUDGMENT; <br> EXHIBITS "1" - "6" |

## PLAINTIFF GEMINI INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff GEMINI INSURANCE COMPANY, by and through

its attorneys, Gallagher Kane Amai, for its Complaint for Declaratory Judgment

against Defendant above-named, alleges and avers as follows:

## PARTIES

1.     Plaintiff GEMINI INSURANCE COMPANY ("Gemini") is, and was at all relevant times herein, a company organized under the laws of the State of Delaware doing business in the State of Hawaii.

2.     Defendant CONSTRX, LTD. ("ConstRX") is, and was at all relevant times herein, a Hawaii corporation engaged in business in the State of Hawaii.

## JURISDICTION AND VENUE

3.     Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. Section 1332 inasmuch as there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, for purposes of determining an actual controversy between the parties.

5.     Venue in this jurisdictional district is proper under 28 U.S.C. Section 1391(a)(2), because all or a substantial part of the events giving rise to the claims at issue in the underlying action, as described herein, occurred within the District of Hawaii.

## NATURE OF ACTION

6.      This is an action by GEMINI, an insurance carrier, seeking a declaration of its rights and duties under Commercial General Liability insurance policies it issued to the named insured ConstRX ("Policies").  GEMINI hereby requests that this Court declare and adjudge that GEMINI does not have a duty to further defend and/or indemnify ConstRX under the Policies, with respect to claims asserted against ConstRX in the underlying arbitration proceeding captioned: <u>ConstRX, Ltd. vs. The Association of Apartment Owners of The Palm Villas at Mauna Lani Resort; John Does 1-10; Jane Does 1-10; Doe Corporations 1-10; Doe Partnerships 1-10; Doe "Non-Profit" Corporations 1-10; Doe Associations 1-10; and Doe Governmental Entities 1-10</u>, DPR No. 13-0437-A, pending with Dispute Prevention & Resolution, State of Hawaii and proceedings related thereto (the "Underlying Arbitration").

## BACKGROUND

7.      On October 28, 2013, ConstRX initiated the Underlying Arbitration by filing a Demand for Arbitration against The Association of Apartment Owners of The Palm Villas at Mauna Lani Resort ("AOAO") and Doe defendants with Dispute Prevention & Resolution in the State of Hawaii ("Demand").

8.      It is alleged in the Demand, in relevant part, that on April 18, 2012, the AOAO entered into an agreement with ConstRX in which the parties agreed that

ConstRX would perform remedial construction repairs to certain condominium buildings and apartment units located within The Palm Villas at Mauna Lani Resort condominium project on the Island of Hawaii ("Contract" and "Project").

9.     It is alleged in the Demand that on or about July 26, 2013, representatives of ConstRX and the AOAO performed a final walk-through of the Project and identified a final punchlist of items of incompleteness or minor defect requiring remedy.

10.    It is alleged in the Demand that by August 14, 2013, ConstRX had completed all work under the Contract, including any applicable change orders and punchlist items, for a total cost of $4,314,700.

11.    It is alleged in the Demand that by September 4, 2013, ConstRX had demobilized from the construction site at the Project.

12.    It is alleged in the Demand that by September of 2013, the AOAO had paid ConstRX only $3,677,625.00.

13.    It is alleged in the Demand that the AOAO refuses to pay ConstRX the remaining $205,537.00 due to ConstRX under the Contract and that the AOAO now threatens to withhold ConstRX's $431,538.00 retainage.

14.    On or about November 27, 2013, the AOAO's representative, Posard Broek + Associates ("PBA"), provided a report titled "Report - Summary of AOAO

4

Claims" ("PBA Report"), upon which the AOAO has relied in response to ConstRX's Demand.  A true and correct copy of the Report is attached and made a part hereof as Exhibit "1".

15.   The PBA Report contains an EXECUTIVE SUMMARY that states, in relevant part, as follows:

> THE ORIGINAL PROJECT
>
> The existing Palm Villas at Mauna Lani project, located on the Kohala Coast of the Big Island of Hawaii, was found to have numerous original construction defects.  KKA and ConstRX represented the Developer, Sunstone ML, LLC, during litigation and a mediated settlement was reached based on KHA's scope of repair and based on the ConstRX cost of repair.
>
> ConstRX'S WORK
>
> ■   A mediated settlement related to the original construction defects resulted in a contract between the Association of Apartment Owners (AOAO) and ConstRX, dated April 18, 2012, in which KHA (David Knox) agreed to provide architectural and engineering design services, including Construction Administration, and ConstRX Ltd. (David Knox) agreed to perform repairs to the subject project for a Cost-Plus With a Guaranteed Maximum Price (GMP) of $3,827,760.
>
> ■   Remedial Construction started on July 2, 2012.

■  Posard Broek + Associates ("PB+A") was the Palm Villas Association of Apartment Owners' (AOAO) Owner's Representative during the repair project.

■  ConstRX alleges to have completed the repair work and the "punch-list" items and demobilized from the site as of August 15, 2013. (EXHIBIT B)

■  Some of ConstRX's work was deficient and required corrective work.  The corrective work was inappropriately billed to the AOAO.

■  ConstRX abandoned the Project prior to completing the corrective work, or the "Punch-list" items.

■  ConstRX has not provided the contractually required Close-Out documents for final completion and payment.

16.    On or about May 1, 2014, the AOAO submitted Claimant's Opening Statement ("Opening Statement") in the Underlying Arbitration.  A true and correct copy of the Opening Statement is attached and made a part hereof as Exhibit "2".

17.    The Opening Statement provides, in relevant part, as follows:

1.    The specifically negotiated Cost Plus GMP contract agreed to by the AOAO and ConstRX required ConstRX to complete a certain work scope for $3,827,760.  This work scope was attached to the contract as Exhibit A.  It was agreed and understood that the homeowners were entitled to this negotiated scope, nothing more and nothing less. Exhibit A ("Contractor's Repair Proposal") not only defines the scope of work, it also defines the costs and GMP.  As stated within the contract, any deviations from this scope of work would require the AOAO's written

6

approval via change orders. **Over the course of the remediation project ConstRX unilaterally reduced the scope of work, and attempted to pocket the difference.** These changes required approved change orders by the AOAO and should have resulted in a reduction of the overall contract price. These unilateral changes caused adjustments to the previously agreed upon costs and GMP. This resulted in the AOAO receiving only a portion of what it had bargained for when the settlement was reached with the developer and the contract was executed with ConstRX. Meanwhile, ConstRX was demanding full price, ignoring its reduced scope and its shoddy work, and trying to overbill the AOAO. ConstRX's negligence and mismanagement of this project has allegedly cost ConstRX approximately $1 million, however ConstRX now fails to mention that it tried to bill this overage to the AOAO as well. It will be shown that ConstRX made absolutely no attempt to honor the GMP.

2.     The architect (KHA) had a fiduciary duty to the Owner when dealing with defective work and deviations from the work scope by the contractor. In this case however, Mr. Knox wore two hats - and simply ignored and excused everything ConstRX did despite KHA's independent contractual obligations to the Consumer AOAO.

3.     In addition to the unilateral changes by ConstRX to the scope of work ConstRX performed unsatisfactory and uncompleted work. ConstRX unilaterally abandoned the job and left the AOAO with defects throughout the project and yet demands to be paid for a job left unfinished. ConstRX has admitted that much work remains incomplete, but contends that it is entitled to final payment after walking off the job site on an unfinished job and without providing the AOAO the necessary and required close-out documents. ConstRX's and KHA's neglect and

7

mismanagement caused repeated corrections of defective and still left incomplete work, and unbelievably ConstRX expects the consumer homeowners to pay for each example of negligence.  ConstRX was supposed to remedy the defective work of the developer and didn't.  ConstRX had no right to abandon the work under the terms of the contract but it did.  ConstRX was obligated to complete the work and it didn't.  It was required to provide warranties and other documents but has not.  The refusal by ConstRX to remedy the remaining deficiencies, even when its subcontractors have indicated a willingness to perform such corrective work, has caused the AOAO the additional expense of hiring another contractor to come in and complete the work.  As a third-party contractor will not warranty the work of a previous contractor, the cost to complete the remediation project and remedy the deficiencies left by ConstRX has increased the AOAO's claim.  Pursuant to the terms of the contract, ConstRX is responsible for the expense.

4.     ConstRX and KHA mislead the AOAO into agreeing to the KHA fix during the underlying mediation negotiations.  The KHA fix was marketed and sold to the consumer homeowners as a cost-saving remedy wherein the AOAO and ConstRX would split the costs saved.  That definitely did not happen.  Instead, the unilateral changes by ConstRX impacted the costs and GMP that had been agreed to.  Throughout the remediation project ConstRX made it impossible to track the costs through very questionable accounting records and unilateral reductions in scope and a refusal to provide the accounting required under the contract.  The evidence will also show that in addition to bogus charges to the consumer homeowners for wasteful and unnecessary items, many times ConstRX's applications for payment were not supported by the accompanied documentation. This leads to the conclusion that ConstRX was simply making up numbers when it

8

submitted its applications for payment. Among other revelatory accounting errors, ConstRX improperly billed the consumer homeowners for first-class airfare, for tools that the contractor already had or should have had, and for an icemaker, toys and other wasteful, irrelevant or unsupported items.

5.     ConstRX also wrongfully liened what even it described as being innocent homeowners in an attempt to extort its way into a payment and in direct violation of the contract and Hawaii statutes. (It eventually abandoned this outrageous harassment, however after considerable costs and fees were incurred by the AOAO, as well as financial impacts related to for sale units.)

18.     In the Opening Statement, the AOAO asserts that "[a]s a result of ConstRX's contractual breaches, the AOAO's special damages alone are $2,597,122[,]" not including general, punitive and treble damages, or attorneys' fees and costs.

## **<u>RESERVATION OF RIGHTS</u>**

19.     Gemini issued a reservation of rights letter dated January 10, 2014 to ConstRX after receipt of tender of the Underlying Arbitration in which Gemini agreed to defend ConstRX under a full reservation of its rights, including the right to bring a declaratory judgment action to determine the obligations and responsibilities of the parties under the Policies. A true and correct copy of the reservation of rights letter dated January 10, 2014 is attached and made part hereof as Exhibit "3".

20.     Gemini issued a second reservation of rights letter dated May 5, 2014 to ConstRX to advise ConstRX of Gemini's coverage position and Gemini's reservation of its rights, including the right to bring a declaratory judgment action to determine the obligations and responsibilities of the parties under the Policies.  A true and correct copy of the reservation of rights letter dated May 5, 2014 is attached and made part hereof as Exhibit "4".

21.     Gemini is defending ConstRX and has been defending ConstRX in the defense of claims brought against ConstRX in the Underlying Arbitration, all in accordance with its Reservation of Rights and any duty to defend under the Policies.

## THE POLICIES

22.     Gemini issued to ConstRX a Commercial General Liability insurance policy under policy number VCGP020038, effective for the policy period of June 15, 2012 to June 15, 2013.  A true and correct copy of policy number VCGP020038 is attached and made a part hereof as Exhibit "5".

23.     Gemini issued to ConstRX a Commercial General Liability insurance policy under policy number VOGP001068, effective for the policy period of June 15, 2013 to June 15, 2014.  A true and correct copy of policy number VOGP001068 is attached and made a part hereof as Exhibit "6".  Policy number VCGP020038 and policy number VOGP001068 are collectively referred to herein as the "Policies".

10

24.     ConstRX is the named insured under the Policies.

25.     The Policies, under Form CG 00 01 12 07 COMMERCIAL GENERAL

LIABILITY COVERAGE FORM, SECTION I - COVERAGES, COVERAGE A

BODILY INJURY AND PROPERTY DAMAGE LIABILITY, provide, in relevant

part, as follows:

     **1.**    **Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

            **(1)**    The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

            **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or

perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**   Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

26.   The Policies, under SECTION I - COVERAGES, COVERAGE A

BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, contain

the following exclusions which provide, in relevant part, as follows:

This insurance does not apply to:

$$*\qquad*\qquad*$$

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   **(a)**     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   **(b)**     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

$$*\qquad*\qquad*$$

13

**j.      Damage To Property**

"Property damage" to:

\*         \*         \*

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*         \*         \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\*         \*         \*

**l.      Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.      Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or

14

property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the lose of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

27.    The Policies, under SECTION V - DEFINITIONS, provides in relevant

part as follows:

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" of your fulfilling the terms of the contract or agreement.

\*          \*          \*

**16.**   "Products-completed operations hazard":

**a.**   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**   Products that are still in your physical possession; or

**(2)**   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

**(a)**   When all of the work called for in your contract has been completed.

**(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor   or   subcontractor

16

working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    *    *    *

22. "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

17

**(2)**   The providing of or failure to provide warnings or instructions.

28.   Policy No. VCGP020038, under SECTION V - DEFINITIONS, contains

the policy definition for the term "insured contract", in relevant part, as follows:

**9.**   "Insured contract" means:

\*      \*      \*

**f.**   That part of any other contract or agreement pertaining to your business (including an indemnification or a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any agreement:

\*      \*      \*

**(2)**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and

18

specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

29.   Policy No. VOGP001068, Under Form CG 24 26 07 04 titled AMENDMENT OF INSURED CONTRACT DEFINITION, modifies the insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART and replace the definition of the term "insured contract" in the policy as follows:

**9.**   "Insured contract" means:

\*      \*      \*

**f.**   That part of any other contract or agreement pertaining to your business (including an indemnification or a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the

"bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any agreement:

\*     \*     \*

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

20

30.   The Policies, Under Form VE 0493 09 10 titled REVISED OCCURRENCE DEFINITION - STATE OF HAWAII, modify the insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART and replace the definition of the term "occurrence" in the Policies as follows:

> Solely with respect to any premises, site or location in Hawaii, the "occurrence" definition under the **Definitions** Section is replaced by the following:
>
> "Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions.
>
> Faulty workmanship does not constitute an "occurrence". But when faulty workmanship performed by your or on your behalf causes "bodily injury" or causes "property damage" to property other than "your work", then such "bodily injury" or "property damage" will be considered caused by an "occurrence".

31.   The Policies, Under Form VE 0189 10 11 titled INSURED CONTRACT (AMENDED), modify the insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART and amend the definition of the term "insured contract" in the Policies as follows:

> Under Section V - Definitions, paragraph 9, "insured contract" is amended to include the following:
>
> It is agreed that the definition of "Insured contract" does not include any contract or agreement, written or oral, that obligates you to assume the tort liability for the sole

21

negligence of another party, that is not a named insured or an insured enrolled subcontractor in this policy.

32.   The Policies, by endorsement under Form VE 0528 10 11 titled PROFESSIONAL LIABILITY EXCLUSION, modify the insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART and provide as follows:

> It is agreed that such insurance as is afforded by this policy shall not apply to any error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of any insured in the conduct of any of an insured's business activities.

33.   The Policies, by endorsement under Form VE 6640 04 03 titled EXCLUSION - CONTINUOUS OR PROGRESSIVE DAMAGE CLAIMS, modify the insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART and provide as follows:

> In the event of any claim against the insured for bodily injury, property damage, personal injury or advertising injury which is or is alleged to be continuing in nature, this policy shall not apply to any such claim if the damage or any portion of it began or is alleged to have begun prior to the date that this policy becomes effective.  This exclusion shall apply whether or not the cause of the alleged damages was known prior to the effective date of the policy.

> We have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" "property damage",

22

"personal injury" or "advertising injury" to which this insurance applies.

## COUNT I
### COVERAGE IS NOT APPLICABLE BECAUSE ECONOMIC LOSS DOES NOT CONSTITUTE "BODILY INJURY" OR "PROPERTY DAMAGE" UNDER THE POLICIES

34.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 33 as though fully alleged herein.

35.     The Policies, under Coverage A, afford coverage only for the damages for which an "insured" is legally liable because of "bodily injury" or "property damage" that occurs during the policy period and is caused by an "occurrence".

36.     In the Underlying Arbitration, it is alleged that "[a]s a result of ConstRX's contractual breaches, the AOAO's special damages alone are $2,597,122."

37.     Under Hawaii law, "economic loss", which includes the costs of remedying building defects, loss because of violations of contract specifications, and diminution in property value, does not constitute "bodily injury" or "property damage".

38.     The damages claimed by the AOAO as a result of the ConstRX's alleged contractual breaches are "economic loss" damages and, therefore, do not constitute "bodily injury" or "property damage".

39.     By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

**COUNT II**
**LIABILITY COVERAGE IS NOT APPLICABLE BECAUSE**
**THERE IS NO "OCCURRENCE"**

40.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 39 as though fully alleged herein.

41.     The Policies, under Coverage A, afford coverage only for damages for which an "insured" is legally liable because of "bodily injury" or "property damage" that occurs during the policy period and is caused by an "occurrence".

42.     Under Hawaii law, there is no "occurrence" where an insured commits an intentional act or omission that results in damages that were expected or reasonably foreseeable.

43.     In the Underlying Arbitration, it is alleged that "[s]ome of ConstRX's work was deficient and required corrective work."

44.     In the Underlying Arbitration, it is alleged that "ConstRX abandoned the Project prior to completing the corrective work, or the 'Punch-list' items."

45.     In the Underlying Arbitration, it is alleged that ConstRX "left the homeowners with construction defects."

46.     In the Underlying Arbitration, it is alleged that "[t]he refusal by ConstRX to remedy the remaining deficiencies . . . caused the AOAO the additional expense of hiring another contractor to come in and complete the work."

47.     The alleged damages were expected or reasonably foreseeable given that they resulted from ConstRX's alleged failure or refusal to complete the work at the Project.

48.     The alleged damages in the Underlying Arbitration were the expected or reasonably foreseeable result of an intentional act or omission committed by ConstRX.

49.     The claims of the Underlying Arbitration are founded on the allegations that ConstRX was not performing in accordance with the terms of its contract with the AOAO.

50.     Under Hawaii law, construction defect claims do not constitute an "occurrence" under commercial general liability policies, and therefore contract and contract-based tort claims arising therefrom are not covered.

51.    As defined in the Policies, "[f]aulty workmanship does not constitute an 'occurrence'".

52.    The claims against ConstRX are breach of contract claims and construction defect claims sounding in contract and/or contract-based tort and, therefore, are not covered under the Policies.

53.    By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

## COUNT III
### LIABILITY COVERAGE IS EXCLUDED UNDER THE "EXPECTED OR INTENDED INJURY" EXCLUSION

54.    Gemini realleges and incorporates the allegations contained in paragraphs 1 through 53 as though fully alleged herein.

55.    The Policies, under Coverage A, do not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

56.    The claims of the AOAO in the Underlying Arbitration are founded upon the allegation that ConstRX failed to fully and properly perform its contract with the AOAO for the remediation of the Project.

57.     In the Underlying Arbitration, it is alleged that "[s]ome of ConstRX's work was deficient and required corrective work."

58.     In the Underlying Arbitration, it is alleged that "ConstRX abandoned the Project prior to completing the corrective work, or the 'Punch-list' items."

59.     In the Underlying Arbitration, it is alleged that ConstRX "left the homeowners with construction defects."

60.     In the Underlying Arbitration, it is alleged that "[t]he refusal by ConstRX to remedy the remaining deficiencies . . . caused the AOAO the additional expense of hiring another contractor to come in and complete the work."

61.     The AOAO alleges deliberate or intentional acts by ConstRX.

62.     The damages alleged by the AOAO against ConstRX in the Underlying Arbitration constitute damages that were expected or intended from the standpoint of ConstRX.

63.     Under the "expected or intended injury" exclusion of the Policies (Exclusion a.), coverage is excluded for the damages claims by the AOAO against ConstRX in the Underlying Arbitration.

64.     By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the

Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

## COUNT IV
## LIABILITY COVERAGE IS EXCLUDED UNDER THE "CONTRACTUAL LIABILITY" EXCLUSION

65.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 64 as though fully alleged herein.

66.     The Policies, under Coverage A, do not apply to "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

67.     The AOAO alleges in the Underlying Arbitration that "[t]he specifically negotiated Cost Plus GMP contract agreed to by the AOAO and ConstRX required ConstRX to complete a certain work scope for $3,827,760."

68.     In the Underlying Arbitration, the AOAO seeks to recover damages from ConstRX by reason of ConstRX assumption of liability in its construction contract with the AOAO.

69.     Under the "contractual liability" exclusion of the Policies (Exclusion b.), coverage is excluded for any "property damage" claimed by the AOAO against ConstRX in the Underlying Arbitration and for which ConstRX may become obligated to pay as damages.

28

70.     By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

**COUNT V**
**LIABILITY COVERAGE IS EXCLUDED UNDER THE**
**"DAMAGE TO PROPERTY" EXCLUSION**

71.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 70 as though fully alleged herein.

72.     The Policies, under Coverage A, do not apply to "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it."

73.     In the Underlying Arbitration, it is alleged that "[s]ome of ConstRX's work was deficient and required corrective work."

74.     In the Underlying Arbitration, it is alleged that "ConstRX abandoned the Project prior to completing the corrective work, or the 'Punch-list' items."

75.     In the Underlying Arbitration, it is alleged that ConstRX "left the homeowners with construction defects."

76.     In the Underlying Arbitration, it is alleged that "[t]he refusal by ConstRX to remedy the remaining deficiencies . . . caused the AOAO the additional expense of hiring another contractor to come in and complete the work."

77.     Under the "damage to property" exclusion in the Policy (Exclusion j.6), any property that was restored, repaired or replaced by ConstRX's work was incorrectly performed on it is excluded from coverage under the Policies.

78.     By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

## COUNT VI
## LIABILITY COVERAGE IS EXCLUDED UNDER THE "DAMAGE TO YOUR WORK" EXCLUSION

79.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 78 as though fully alleged herein.

80.     The Policies, under Coverage A, do not apply to "property damage" to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"

81.     In the Underlying Arbitration, it is alleged that "[s]ome of ConstRX's work was deficient and required corrective work."

30

82.     In the Underlying Arbitration, it is alleged that "ConstRX abandoned the Project prior to completing the corrective work, or the 'Punch-list' items."

83.     In the Underlying Arbitration, it is alleged that ConstRX "left the homeowners with construction defects."

84.     In the Underlying Arbitration, it is alleged that "[t]he refusal by ConstRX to remedy the remaining deficiencies . . . caused the AOAO the additional expense of hiring another contractor to come in and complete the work."

85.     To the extent the Underlying Arbitration alleges "property damage", such "property damage" was to the work of ConstRX arising out of it or any part of it.

86.     Under the "damage to your work" exclusion in the Policy (Exclusion l.), any "property damage" to the work of ConstRX arising out of it or any part of it is excluded from coverage under the Policies.

87.     By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

<u>**COUNT VII**</u>
**LIABILITY COVERAGE IS EXCLUDED UNDER THE
"IMPAIRED PROPERTY" EXCLUSION**

88.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 87 as though fully alleged herein.

89.     The Policies, under Coverage A, do not apply to "property damage" to "'impaired property' or property that has not been physically injured, arising out of: **(1)** A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."

90.     In the Underlying Arbitration, it is alleged that "[s]ome of ConstRX's work was deficient and required corrective work."

91.     In the Underlying Arbitration, it is alleged that "ConstRX abandoned the Project prior to completing the corrective work, or the 'Punch-list' items."

92.     In the Underlying Arbitration, it is alleged that ConstRX "left the homeowners with construction defects."

93.     In the Underlying Arbitration, it is alleged that "[t]he refusal by ConstRX to remedy the remaining deficiencies . . . caused the AOAO the additional expense of hiring another contractor to come in and complete the work."

32

94.     To the extent the Underlying Arbitration alleges "property damage", such "property damage" was to "impaired property" or property that has not been physically injured arising out of a "defect, deficiency or inadequacy" in ConstRX's work or a "delay or failure" by ConstRX to perform a contract agreement in accordance with its terms.

95.     Under the "impaired property" exclusion in the Policy (Exclusion m.), any "property damage" claimed by the AOAO against ConstRX is excluded from coverage under the Policies.

96.     By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

## COUNT VIII
## LIABILITY COVERAGE IS EXCLUDED UNDER THE "PROFESSIONAL LIABILITY" EXCLUSION

97.     Gemini realleges and incorporates the allegations contained in paragraphs 1 through 96 as though fully alleged herein.

98.     Under the Professional Liability Exclusion endorsement to the Policies, coverage under the Policies does "not apply to any error or omission, malpractice or

mistake of a professional nature committed or alleged to have been committed by or on behalf of any insured in the conduct of any of an insured's business activities."

99.   It is alleged in the Underlying Arbitration that ConstRX agreed to perform the repair and remediation work at the Project.

100.   It is alleged in the Underlying Arbitration that ConstRX's principal, David Knox, in his capacity as principal of Knox Hoversland Architects, Ltd., provided architectural and engineering design services for the Project.

101.   Under the Professional Liability Exclusion, "any error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of any insured in the conduct of any of an insured's business activities" is excluded from coverage under the Policies.

102.   By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

## COUNT IX
## LIABILITY COVERAGE IS EXCLUDED UNDER THE "CONTINUOUS OR PROGRESSIVE DAMAGE CLAIMS" EXCLUSION

103.   Gemini realleges and incorporates the allegations contained in paragraphs 1 through 102 as though fully alleged herein.

34

103.   Under the Continuous or Progressive Damages Claims Exclusion endorsement to the Policies, coverage for "property damage" under the Policies does "not apply to any such claim if the damage or any portion of it began or is alleged to have begun prior to the date that th[e] policy [became] effective," "whether or not the cause of the alleged damages was known prior to the effective date of the policy."

104.   It is alleged in the Underlying Arbitration that "Remedial Construction started on July 2, 2012."

105.   In the Underlying Arbitration, it is alleged that "[s]ome of ConstRX's work was deficient and required corrective work."

106.   In the Underlying Arbitration, it is alleged that ConstRX "left the homeowners with construction defects."

107.   Policy No. VCGP020038 became effective on June 15, 2012.

108.   Under the Continuous or Progressive Damages Claims Exclusion endorsement to the Policies, any "property damage" that began or is alleged to have begun prior to the effective date of Policy No. VCGP020038 on June 15, 2012, whether or not the cause of such damages were known prior to the effective date of Policy No. VCGP020038, are excluded from coverage.

109.   Policy No. VOGP001068 became effective on June 15, 2013.

35

110.    Under the Continuous or Progressive Damages Claims Exclusion endorsement to the Policies, any "property damage" that began or is alleged to have begun prior to the effective date of Policy No. VOGP001068 on June 15, 2013, whether or not the cause of such damages were known prior to the effective date of Policy No. VOGP001068, are excluded from coverage.

111.    By reason thereof, Gemini is entitled to a declaration from this Court that coverage under the policies is not applicable to the claims against ConstRX in the Underlying Arbitration, and Gemini therefore does not have a duty to further defend and/or indemnify ConstRX in the Underlying Arbitration.

**COUNT X**
**NO COVERAGE OBLIGATION**

112.    Gemini realleges and incorporates the allegations contained in paragraphs 1 through 111 as though fully alleged herein.

113.    An actual controversy of a justiciable nature exists between Gemini and ConstRX, wherein Gemini contends that the Policies afford no coverage benefits or obligations to ConstRX.

114.    On the basis of the foregoing, declaratory relief is necessary and proper to determine the rights, obligations and liabilities, if any, which exist as to said parties under the Policies issued to ConstRX.

WHEREFORE, Gemini prays for judgment in its favor and against ConstRX as follows:

A.     A declaratory judgment to be issued by this Court that Gemini is entitled to a declaration from this Court that there is no coverage under the Policies, and Gemini therefore does not have a duty to defend and/or indemnify ConstRX in the Underlying Arbitration.

B.     That Gemini be entitled to recover from ConstRX some or all of the costs expended in having to bring this action.

C.     That Gemini be entitled to such other and further relief as the Court deems just and proper under the circumstances of this case.

DATED: Honolulu, Hawaii, August 7, 2014 .

/s/ J. Patrick Gallagher
J. PATRICK GALLAGHER
SKYLER G. CRUZ

Attorneys for Plaintiff
GEMINI INSURANCE COMPANY