IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| GEMINI INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> CONSTRX LTD., <br><br> Defendant. | CIVIL NO. 14-00355 DKW-RLP <br><br> **ORDER (1) DENYING GEMINI INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) GRANTING CONSTRX LTD.'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO DEFEND** |

## INTRODUCTION

The parties seek a determination of Gemini's duties to defend and indemnify under commercial general liability ("CGL") policies issued to ConstRX Ltd. ("CRX") with respect to construction defect and other claims against CRX in arbitration. Because the Underlying Arbitration involves claims for which the possibility of coverage exists, due to the operative Revised Occurrence Endorsement, the Court DENIES Gemini's Motion for Partial Summary Judgment and GRANTS CRX's Counter-Motion for Partial Summary Judgment with respect to the duty to defend. Because Gemini's Motion also seeks a ruling regarding its duty to indemnify CRX, and under the circumstances, such a determination is

premature pending resolution of the Underlying Arbitration, the Court denies the request without prejudice.

## BACKGROUND

### I.  Factual Background

#### A.  The Underlying Arbitration

In April 2012, CRX contracted with The Association of Apartment Owners of The Palm Villas at Mauna Lani Resort ("AOAO") to perform remedial construction repairs to condominium buildings and apartment units ("Construction Contract" or the "Project").   Under the Construction Contract, the AOAO was to pay CRX for its work on a Cost Plus Fee Basis, with a Guaranteed Maximum Price ("GMP") of $3,827,760.   According to CRX, additive and deductive change orders were requested and approved by the AOAO during the course of the Project, which modified the total contract price/GMP to $4,314,700.   By August 14, 2013, CRX asserts that it completed all work, including change orders and punchlist items, and by September 14, 2013, it had demobilized from the site.   CRX contends that the AOAO paid it only $3,677,625 of the $4,314,700 it is owed.   *See* CRX Arbitration Demand, Ex. A, Dkt. No. 43-2.

On October 28, 2013, CRX filed a Demand for Arbitration against the AOAO with Dispute Prevention & Resolution ("DPR"), styled *ConstRX, Ltd. vs. The*

*Association of Apartment Owners of The Palm Villas at Mauna Lani Resort; et al.*, DPR No. 13-0437-A (the "Underlying Arbitration"). Ex. A. The Demand alleges claims for breach of contract, breach of good faith and fair dealing, intentional misrepresentation, wrongful inducement, unjust enrichment, and other quasi-contractual and equitable claims. CRX demanded payment from the AOAO of the outstanding $637,075. *Id.*

On November 27, 2013, the AOAO's representative during the Project, Posard Broek + Associates ("PBA"), issued a report entitled "Report – Summary of AOAO Claims" ("PBA Report"), which sets forth the AOAO's claims against CRX arising from the Project. Ex. B, Dkt. No. 43-3. The PBA Report describes the Project and summarizes the AOAO's claims, in part, as follows—

> The existing Palm Villas at Mauna Lani project, located on the Kohala Coast of the Big Island of Hawaii, was found to have numerous original construction defects. KHA and ConstRX represented the Developer, Sunstone ML, LLC, during litigation and a mediated settlement was reached based on KHA's scope of repair and based on the ConstRX cost of repair.
>
> ConstRX'S WORK
> - A mediated settlement related to the original construction defects resulted in a contract between the Association of Apartment Owners (AOAO) and ConstRX, dated April 18, 2012, in which KHA (David Knox) agreed to provide architectural and engineering design services, including Construction Administration, and ConstRX Ltd. (David Knox) agreed to perform repairs to the subject project for a

Cost-Plus With a Guaranteed Maximum Price (GMP) of $3,827,760.
- Remedial Construction started on July 2, 2012.
- Posard Broek + Associates ("PB+A") was the Palm Villas Association of Apartment Owners' (AOAO) Owner's Representative during the repair project. ConstRX alleges to have completed the repair work and the "punch-list" items and demobilized from the site as of August 15, 2013. (EXHIBIT B)
- Some of ConstRX's work was deficient and required corrective work. The corrective work was inappropriately billed to the AOAO.
- ConstRX abandoned the Project prior to completing the corrective work, or the "Punch-list" items.
- ConstRX has not provided the contractually required Close-Out documents for final completion and payment.

Ex. B at 3. The PBA Report details claims against CRX totaling $1,232,772.[1] *Id.*

---

[1] The PBA Report includes a breakdown of the claims within the following general categories—

1. Corrective Work ($203,802)
2. Remaining Punchlist ($156,538)
3. Scope Reduction ($351,746)
4. AOAO Time Spent on Subcontractor Final Payments and Liens ($21,285)
5. Modified Schedule of Values and Unapproved Charges ($459,826)
6. Construction Completion Delay Costs ($25,000)
7. Contract and Change Order Summary and ConstRX-Modified Schedule of Values
8. Status of Total Contract and Payments to Date to ConstRX and KHA
9. Summary of Cost Overruns and Charges in Excess of the Contract Schedule of Values
10 Substantial Completion and Project Close-Out Documents Not Provided ($14,575)

Ex. B at 3.

4

On May 1, 2014, the AOAO submitted its Opening Statement in the Underlying Arbitration. Ex. C, Dkt. No. 43-4. The five-day arbitration hearing commenced on May 5, 2014. Suppl. Decl. of Michael Barnette ¶ 3, Dkt. No. 58-1. On June 19, 2014, the AOAO submitted its Post-Arbitration Brief. Ex. M, Dkt. No. 28-3. In February 2015, the arbitrator entered a Final Award in favor of CRX, which the parties respectively sought to confirm and to vacate in the Circuit Court of the First Circuit, State of Hawaii. Decl. of Bruce Wakuzawa ¶ 6, Dkt. No. 54-2. The Circuit Court granted the AOAO's motion to vacate the Final Award, and on April 12, 2017, CRX filed a notice of appeal. *Id.* CRX's appeal of the Underlying Arbitration is pending before the Hawaii Intermediate Court of Appeals as of the date of this order. *See AOAO of The Palm Villas at Mauna Lani Resort v. ConstRX, Ltd.*, Hawaii Judiciary Electronic Filing and Service System ("JEFS") No. CAAP-17-0000161, *available at*: https://jimspss1.courts.state.hi.us/JEFS (date of last filing May 15, 2018).

**B.**     **The Gemini Policies**

Gemini issued to CRX a Commercial General Liability ("CGL") insurance policy under policy number VCGP020038, effective for the policy period of June 15, 2012 to June 15, 2013, Ex. D, Dkt. No. 43-5, and policy number VOGP001068, effective for the policy period of June 15, 2013 to June 15, 2014, Ex. E, Dkt. No.

43-6 (collectively, the "Policies"). Under the Policies, Gemini is obligated to pay for sums that CRX "becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and has the "right and duty to defend the insured against any 'suit' seeking those damages." Policies § I.1.a. The coverage applies only if "'bodily injury' or "property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[.]" Policies § I.1.b. The Policies include the following relevant definitions—

> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> * * *
>
> **17.** "Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policies § V. Of particular note, Form VE 0493 09 10, entitled "Revised Occurrence Definition – State of Hawaii," modifies the coverage provided—

> Solely with respect to any premises, site or location in Hawaii, the "occurrence" definition under the **Definitions** Section is replaced by the following:

> "Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions.
>
> Faulty workmanship does not constitute an "occurrence". But when faulty workmanship performed by you or on your behalf causes "bodily injury" or causes "property damage" to property other than "your work", then such "bodily injury" or "property damage" will be considered caused by an "occurrence".

Policies ("Revised Occurrence Endorsement"), Ex. I, Dkt. No. 43-11. "Your work," as defined in the Policies, means "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations" and includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and (2) The providing of or failure to provide warnings or instructions." Policies § V.22.

Coverage under the Policies is subject to the following exclusions—

> **a.      Expected or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> **b.      Contractual Liability**
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**j.   Damage To Property**
"Property damage" to:

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

* * *

**l.      Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.      Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Policies § I.A.2.   The Policies also contain exclusions for professional liability, Ex.

J, Dkt. No. 43-12, and punitive damages.   Ex. K, Dkt. No. 43-13.

CRX tendered its claim to Gemini on December 20, 2013 and also provided

the PBA Report to Gemini's claims processor.   Decl. of Michael Barnette ¶ 3, Dkt.

No. 43-1; 2/8/18 Barnette Dep. Tr. at 61–63, Dkt. No. 54-3.    Gemini issued a

reservation of rights letter to CRX, dated January 10, 2014, in which Gemini agreed

to defend CRX under a full reservation of its rights, including the right to bring a

declaratory judgment action to determine the obligations and responsibilities of the

parties under the Policies.    Barnette Decl. ¶ 10; Ex. F, Dkt. No. 43-7.    Gemini

issued a second reservation of rights letter dated May 5, 2014 to further advise CRX

of Gemini's coverage position and Gemini's reservation of its rights.    Barnette

Decl. ¶ 11; Ex. G, Dkt. No. 43-8.    Gemini has been providing CRX with a defense

subject to its reservation of rights in the Underlying Arbitration.    Barnette Decl. ¶ 4.

## II.    **Procedural Background**

Gemini filed a Complaint for Declaratory Judgment on September 7, 2014.[2]

Dkt. No. 1.    The Complaint requests a declaration that under the Policies, Gemini

has no duty to defend or indemnify CRX for the claims asserted in the Underlying

Arbitration.

On August 14, 2017, CRX answered the Complaint and asserted a

Counterclaim against Gemini.    Dkt. No. 31.    The Counterclaim included three

counts: (1) negligence; (2) bad faith; and (3) declaratory judgment.    CRX contends

in its third count that "it is entitled to a declaratory judgment that the claims asserted

---

[2]On October 24, 2014, the case was stayed pending resolution of the Underlying Arbitration, Dkt.
No. 10 (Stipulation and Order), and the stay was lifted on July 31, 2017.

by the AOAO are fully covered under the applicable policies and that no exclusion bars or limits Gemini's duty to defend and indemnify [CRX]."   Counterclaim ¶ 39, Dkt. No. 31-1.

Gemini seeks summary judgment on the counts in its Complaint, and a declaratory judgment that it is not obligated to defend or indemnify CRX against the claims alleged in the Underlying Arbitration.   For its part, CRX seeks partial summary judgment with respect to (1) the Counterclaim's third count for a declaration that Gemini has a duty to defend; and (2) counts I through IX of Gemini's Complaint as they pertain to the duty to defend.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."   A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *Id.*

On a motion for summary judgment regarding its duty to defend, the insurer bears the burden of proving there is "no genuine issue of material fact with respect to whether a *possibility* exists that the insured would incur liability for a claim covered by the policy."   *Tri–S Corp. v. W. World Ins. Co.*, 110 Hawai‘i 473, 488, 135 P.3d

82, 97 (2006) (quoting *Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Hawai‘i 398, 412–13, 992 P.2d 93, 107–08 (2000)) (brackets omitted, emphasis in original).   The insured's burden, on the other hand, "is comparatively light, because it has merely to prove that a *possibility* of coverage exists."   *Id.* (brackets omitted, emphasis in original).

## DISCUSSION

Because the possibility for coverage exists, particularly in light of the Revised Occurrence Endorsement, Gemini has a duty to defend.   Moreover, none of the exclusions cited by Gemini wholly preclude the possibility of coverage.   The Court thus grants summary judgment to CRX with respect to Gemini's duty to defend. Further, because the Underlying Arbitration is not fully resolved, the Court is not able to determine whether Gemini must indemnify CRX.   Accordingly, Gemini's request for summary judgment regarding its duty to indemnify is denied without prejudice as premature.

## I.     Gemini Has a Duty to Defend

The Court first outlines the principles of contract interpretation applicable to insurance coverage before turning to whether any of the claims asserted against CRX by the AOAO in the Underlying Arbitration is covered under the Policies, triggering Gemini's duty to defend.

## A.  Framework for Construing Insurance Contracts

Under Hawaii law, courts look to the plain language of the insurance policy to determine the scope of the insurer's duties.  *Burlington Ins. Co. v. Oceanic Design & Const. Inc.*, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech."); *see also* Haw. Rev. Stat. § 431:10-237 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.").

> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation.  We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Tri–S Corp.*, 110 Hawai'i at 489, 135 P.3d at 98 (quoting *Dairy Rd. Partners*, 92 Hawai'i at 411–12, 992 P.2d at 106–07 (internal citations, quotation marks, brackets, and ellipses omitted)).

A contract term is considered ambiguous only if it is "capable of being reasonably understood in more ways than one." *Cho Mark Oriental Food, Ltd. v. K & K Int'l,* 73 Haw. 509, 520, 836 P.2d 1057 (1992). "[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc*., 90 Hawai'i 315, 324, 978 P.2d 753 (1999).

## 1. Duty to Defend

The duty to defend under Hawaii insurance law is broad and "arises wherever there is the mere potential for coverage." *Commerce & Indus. Ins. Co. v. Bank of Haw*., 73 Haw. 322, 326, 832 P.2d 733 (1992). Hawaii abides by the "complaint allegation rule," whereby the determination of whether an insurer has a duty to defend focuses on the claims and facts that are alleged.[3] *Burlington*, 383 F.3d at 944. Thus, "[t]he duty to defend 'is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract.'" *Id.* (quoting *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem.*

---

[3]"The focus is on the alleged claims and facts. The duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Burlington Ins. Co*., 383 F.3d at 944–45. "In determining whether coverage exists under a liability policy, Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying facts alleged in the pleadings." *Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128, 1134 (D. Haw. 2010) (citing *Bayudan v. Tradewind Ins. Co*., 87 Hawai'i 379, 957 P.2d 1061, 1069 (App. 1998)).

*Co.*, 76 Hawaiʻi 166, 169, 872 P.2d 230 (1994)). "Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Hawaiian Holiday*, 76 Hawaiʻi at 169, 872 P.2d 230 (quotation marks and citation omitted). The duty to defend is determined at the time of tender. *Burlington Ins. Co. v. United Coatings Mfg. Co*., 518 F. Supp. 2d 1241, 1248 n.2 (D. Haw. 2007) (citing *Dairy Rd. Partners*, 92 Hawaiʻi at 422 n.14, 992 P.2d at 117 n. 14); *see also Hart v. Ticor Title Ins. Co*., 126 Hawaiʻi 448, 458, 272 P.3d 1215, 1225 (2012) ("The duty to defend is not outcome-determined but merely depends on a potential for coverage and is determined at the time suit is brought and not at the conclusion of litigation. Stated differently, to have any effect at all, the duty to defend must be determined when the claim is initially asserted.") (citations and quotation marks omitted).[4]

---

[4]Because tender is the operative time, the *arguments* or *allegations* set forth in the AOAO's Opening Brief, filed May 1, 2014, or its Post-Hearing Brief, filed June 19, 2014—each of which post-date the December 20, 2013 tender to Gemini—do not factor into the Court's determination of whether the AOAO's claims create a duty to defend. Under Hawaii law, if the underlying lawsuit alleges facts within coverage, an insurer may not rely on facts extrinsic to the underlying complaint "that may be subject to dispute in the underlying lawsuit as a basis for disclaiming its duty to defend...." *United Coatings Mfg. Co*., 518 F. Supp. 2d at 1248 n.2 (citing *Dairy Rd. Partners*, 92 Hawaiʻi at 422, 992 P.2d at 117). This rule, however, has an exception—an insurer may rely on extrinsic facts to disclaim liability if those facts will not be resolved differently in the underlying lawsuit. *Id*. In this instance, however, the contents of the post-tender filings in the Underlying Arbitration cited by the parties, do not constitute such extrinsic *facts*, and thus the exception does not apply.

The Hawaii Supreme Court explains the scope of the duty to defend as follows—

> The obligation to defend is broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage.  In other words, the duty to defend rests primarily on the possibility that coverage exists.  This possibility may be remote but if it exists, the insurer owes the insured a defense.  All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

*Tri–S Corp.*, 110 Hawai'i at 488, 135 P.3d at 97 (emphasis in original); *see also Burlington*, 383 F.3d at 944 ("The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed.").  An insurer's duty to defend thus extends beyond claims where liability within the scope of the policy is ultimately found.  *See Finley v. Homes Ins. Co.*, 975 P.2d 1145, 1149–50 (Haw. 1998) ("Where a complaint alleges grounds that are both within and without the scope of insurance coverage, the insurer is required to defend the entire action.") (citing *First Ins. Co. of Haw., Inc. v. State of Haw.*, 665 P.2d 648, 652 (1983)).

## 2. <u>Duty to Indemnify</u>

The insurer owes a duty to indemnify the insured "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  *State Farm Fire & Cas. Co. v. Cabalis*, 80 F.

Supp. 3d 1116, 1122 (D. Haw. 2015) (quoting *Dairy Rd. Partners v. Island Ins. Co.*, *Ltd.*, 92 Hawaiʻi 398, 413, 992 P.2d 93, 108 (2000)).    To obtain summary judgment on its duty to indemnify, an insurer is required to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies.    *Id.* at 1123 (citation omitted).

## B.    Claims In the Underlying Arbitration Trigger a Duty to Defend

Because the AOAO's claims in the Underlying Arbitration arise from CRX's allegedly faulty workmanship as well as from damage to property outside of the scope of CRX's work, the cause of which is unknown, Gemini owes its insured a defense of all claims.    The claims asserted in the Underlying Arbitration are not categorically excluded under the Policies' modified definition of "occurrence," in spite of how that term has traditionally been understood in Hawaiʻi case law. Further, Gemini fails to establish that the Policies' exclusions defeat all potential for coverage, and therefore, it is not discharged from its duty to defend.

### 1.    Revised Occurrence Endorsement

The Policies contain a modified definition of "occurrence" in the Revised Occurrence Endorsement, which expressly *includes* within coverage "property damage" caused by CRX as long as the damage was not to CRX's own "work." Although "occurrence" means "an accident, including continuous or repeated

exposure to the same general harmful conditions," and "[f]aulty workmanship does not constitute an 'occurrence,'" even under the language of the revised endorsement, the significant exception is applicable to the claims alleged in the Underlying Arbitration: "when faulty workmanship performed by you or on your behalf causes … 'property damage' to property other than 'your work', then such … 'property damage' will be considered caused by an 'occurrence.'"   Ex. I.   Thus, the plain language of the Revised Occurrence Endorsement, when appropriately "construed in accord with the reasonable expectations of a layperson," indicates that coverage exists even for contract-based "faulty workmanship" claims so long as the damage is to property other than CRX's work.   *Tri–S Corp.,* 110 Hawai'i at 489, 135 P.3d at 98 (internal citations and quotation marks omitted).

Because the standard term "occurrence" is modified in the Gemini Policies, those cases from this jurisdiction holding that contract and contract-based tort claims are not within the scope of typical CGL policies do not bar coverage under the circumstances alleged here.   *See, e.g.*, *Group Builders, Inc. v. Admiral Ins. Co*., 123 Hawai'i 142, 148–149, 231 P.3d 67, 74 (2010) ("We hold that under Hawai'i law, construction defect claims do not constitute an 'occurrence' under a CGL policy. Accordingly, breach of contract claims based on allegations of shoddy performance

are not covered under CGL policies.   Additionally, tort-based claims, derivative of these breach of contract claims, are also not covered under CGL policies.").[5]

In the Underlying Arbitration, the PBA Report alleges that work performed by CRX or on its behalf caused damage to property other than "your work," including damage for "corrective work that was performed by ConstRX to correct construction defects as a result of their self-performed work or that of their subcontractors"—

f.      Window leaks and flashing

* * *

j.      Plumbing (leaks and crossed lines) … Also includes piping damaged by ConstRX

* * *

l.      Damage to unit interiors and belongings (e.g. refrigerator door ding, refrigerant lines, damaged broken glass or hardware, etc.)

* * *

n.      Berber carpet cut and seams are coming apart

---

[5]*See also Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, No. CV 15-00245 ACK-KSC, 2017 WL 5892255, at *5 (D. Haw. Sept. 27, 2017) (summarizing prior holdings in which "[c]ourts applying Hawaii law have consistently determined that claims arising out of alleged breaches of contract and warranties do not involve accidents or 'occurrences' under a standard CGL policy"); *State Farm Fire & Cas. Co., v. GP West, Inc*., 190 F. Supp. 3d 1003, 1016, 1020 (D. Haw. 2016) ("the underlying plaintiffs' claims for breach of contract, breach of express warranty, and breach of implied warranties are all contract-based claims and are therefore not covered by State Farm's CGL policies" because "none of the underlying claims arise from a covered 'occurrence'"); *United Coatings*, 518 F. Supp. 2d at 1250 ("Contract-based claims—including claims sounding in tort which are predicated upon, stemming directly from, or derivative of, [the insured's] contracts, contracts of sales, and warranties—are not covered under the CGL Policy.").

Ex. B at 15.   Moreover, AOAO claims arising from "Remaining Punchlist" items to

be completed include—

> l.    Miscellaneous corrective work at each building … Electrical boxes, plumbing straps, cracked window frames, damaged screens, etc.
>
> * * *
> p.    Units H-3, H-4, and H-23 interior damage and damage to belong[ing]s, mismatched bathroom tiles … Several large pieces of furniture are damaged

Ex. B at 15.

Gemini does not dispute that CRX and its subcontractors did not perform

"work" on all of these items.   Neither CRX nor its subcontractors performed work

on or to "owners' belongings, refrigerators, furniture, glass and hardware items,

such as framed mirrors, drinking glasses and cookware belonging to owners, cabinet

handles, and interior door handles."   Decl. of David Knox ¶ 5, Dkt. No. 54-1.   Nor

did CRX or its subcontractors perform any work on window or door screens,

although it did remove "screens" in order "to do construction work at the AOAO."

Knox Decl. ¶ 4.   CRX and its subcontractors "may have performed limited work on

some 'piping,' 'plumbing lines,' and 'wiring and fixtures,' within the AOAO," but

they did not perform work "on all of the 'piping,' 'plumbing lines,' and 'wiring and

fixtures,' within the AOAO."   Knox Decl. ¶ 7.   Under the Policies' definitions

then, the claims involve at least some "property damage" that CRX and/or its subcontractors allegedly caused, but for which they performed no "work or operations," and did not furnish "material, parts, or equipment." Accordingly, because the Policies apply to "'property damage' [that] is caused by an 'occurrence' that takes place in the 'coverage territory,'" Policies § I.1.b, the possibility of coverage exists based upon the claims in the PBA Report.

For its part, Gemini asserts that all of the claims made in the PBA Report describe "corrective work" and "punchlist" items that reflect repairs or outstanding matters relating to CRX and/or its subcontractors' actual "work." While Gemini *might* ultimately be correct about the cause of the damage, the AOAO's claims asserted in the Underlying Arbitration are not so clear and create the potential for coverage. Indeed, Gemini acknowledges that, at the time of tender, it did not know whether there existed an "occurrence" resulting in "property damage" during its policy periods. 2/8/18 Barnette Dep. Tr. at 58.

Accordingly, the Court finds it possible that coverage exists based upon the modified definition of "occurrence" applicable in this case. Because the potential for coverage exists, Gemini has a duty to defend the Underlying Arbitration, notwithstanding other claims brought by the AOAO that fall outside of the Policies' coverage. *See Cabalis*, 80 F. Supp. 3d at 1128 ("where a suit raises potential for

indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage") (quoting *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co*., 76 Hawai'i 166, 872 P.2d 230, 233 (1994)).

The Court next examines the exclusions cited by Gemini to determine whether they defeat the possibility of coverage.

### 2. Gemini Has Not Established that Coverage Is Precluded by the Policies' Exclusions

Unlike a coverage provision, an exclusion is read narrowly. *Charter Oak Fire Ins. Co. v. Endurance Am. Specialty Ins. Co.*, 40 F. Supp. 3d 1296, 1310 (D. Haw. 2014) (citing *Island Ins. Co. v. Arakaki*, 123 Hawai'i 299, 2010 WL 2414924, *6 (App. June 16, 2010) ("Hawai'i courts construe the exclusions in policies narrowly."); *Fortune v. Wong*, 68 Haw. 1, 10, 702 P.2d 299, 305 (Haw. 1985) (approving general proposition that insurance policies are construed broadly and exclusions are construed narrowly)). The insurer has the burden of establishing the applicability of any exclusion. *Id.* at 1305 (citing *Sentinel*, 76 Hawai'i at 297, 875 P.2d at 914).

### a. "Expected or Intended Injury" Exclusion

Gemini contends that coverage is precluded by the Policies' "Expected or Intended Injury" exclusion, which applies to "'property damage' expected or

intended from the standpoint of the insured." Policies § I.2.a. "[W]hen insurance policies contain exclusions for intentional conduct and expected injuries, those exclusions are limited." *Weight v. USAA Cas. Ins. Co*., 782 F. Supp. 2d 1114, 1128 (D. Haw. 2011) (citation omitted).

At least with respect to "property damage" resulting in claims by the AOAO that were either not clearly alleged to be "intentional" nor caused by acts that were "expected" from the standpoint of CRX, the exclusion does not categorically apply to bar coverage. For example, based upon the AOAO's asserted claims at the time of tender, there is no indication who caused certain "property damage," or whether it was intentional or expected from CRX's viewpoint. On the contrary, CRX presents evidence that certain property damage to owners' belongings, refrigerators, furniture, glass and hardware items, such as framed mirrors, drinking glasses and cookware, cabinet handles, and interior door handles, was not clearly within the scope of its work or operations, and Gemini does not, in fact, know the source of the damage. There is no allegation or factual basis to conclude that such damage was necessarily intended or expected by CRX. In short, the claims in the Underlying Arbitration do *not* categorically relate to "property damage" inexorably caused by "intentional" conduct. Nor was the conduct that caused the alleged damage, where that can be ascertained, or the actual injury to property, necessarily "expected" by

the insured in the circumstances of this case.[6]   The possibility for coverage

therefore exists.   *Cf. Tri–S Corp.*, 135 P.3d at 102–03 ("In view of the fact that the

underlying complaint alleges a claim for relief ... that may be supported by evidence

of either intentional or non-intentional misconduct, it bears repeating that the duty to

defend rests primarily on the possibility that coverage exists.").

### b.   "Contractual Liability" Exclusion

Coverage is also not precluded under the "Contractual Liability" exclusion,

which applies to "'property damage' for which the insured is obligated to pay

damages by reason of the assumption of liability in a contract or agreement."

Policies § I.2.b.   Due to the nature of the claims asserted by the AOAO in the

Underlying Arbitration, it is not clear all "property damage" resulted from claims

that are subject to the Construction Contract or for which CRX assumed liability, or

resulted from torts that transcend the underlying contracts or warranties.   *See*

*United Coatings*, 518 F. Supp. 2d at 1252.   For example, to the extent the AOAO

---

[6]"Expected" injury means injury that occurred:

> when the insured acted even though he was consciously aware that harm was
> practically certain to occur from his actions.   *However, the definition of 'expected'*
> *does not exclude* [from coverage] *harm that the insured 'should have*
> *anticipated[.]'*   Consciousness of the likelihood of certain results occurring is
> determined by examination of the subjective mental state of the insured.   Injuries
> that result from "negligent and reckless conduct" are not "expected injuries"[.]

*Weight v. USAA Cas. Ins. Co.*, 782 F. Supp. 2d 1114, 1128 (D. Haw. 2011) (citation and quotation
marks omitted).

alleges that CRX and/or the architect breached duties of care pre-dating the relevant agreements and that caused "property damage" for which the AOAO now seeks repayment, *see* Ex. B at 3, 7, Gemini has not met its burden of establishing that *all* of the AOAO's claims are contract-based and categorically barred.

Moreover, the exclusion must be read narrowly and in tandem with the Revised Occurrence Endorsement, which expressly provides for coverage "when faulty workmanship performed by you or on your behalf causes … 'property damage' to property other than 'your work,'" notwithstanding whether the insured is "obligated to pay damages by reason of the assumption of liability in a contract or agreement" for the damage caused by its faulty workmanship. Gemini's interpretation of the "Contractual Liability" exclusion would render the Revised Occurrence Endorsement a nullity. Indeed, the Court has already determined that the Revised Occurrence Endorsement, when appropriately "construed in accord with the reasonable expectations of a layperson," means that the possibility of coverage exists even for contract-based "faulty workmanship" claims so long as the damage is to property other than CRX's work. In the event the coverage provision and the exclusion conflict, or create an ambiguity, the Policies as a whole "must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Tri–S Corp.*, 110 Hawai'i at 489, 135 P.3d at 98 (quoting

*Dairy Rd. Partners*, 92 Hawai'i at 411–12, 992 P.2d at 106–07 (internal citations, quotation marks, brackets, and ellipses omitted)).

Consequently, under the present circumstances, Gemini fails to establish that the exclusion defeats coverage.

### c. "Damage to Property," "Impaired Property," and "Your Work" Exclusions

Gemini asserts that the following exclusions apply—

> (5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Policies § I.2.j.   However, these exclusions do not apply under the circumstances alleged because, at the time of tender, the AOAO's claims in the Underlying Arbitration were not limited to those arising from damage to the "particular part of *real property* on which you … are performing operations," or the "property that must be restored, repaired or replaced because '[CRX's] work' was incorrectly performed on it."   As detailed above, the AOAO's claims include damage to tangible property beyond the scope of CRX's work, the cause of which is unknown based upon the allegations in the PBA Report, and claims for damage to property

beyond merely those that require repair due to CRX incorrectly performing work. To the extent Gemini relies on the "ongoing operations" exclusion, that portion of subsection j.5 does not apply to defeat coverage—instead, that exclusion applies only to the "particular part" and not the entirety of the property. Nor is it necessarily the case that all claims arose from damage that occurred while CRX was on site performing operations, in light of the PBA Report's assertion that CRX "demobilized from the site as of August 15, 2013 … and abandoned the Project prior to completing the corrective work." Ex. B at 3.

Likewise, the "Damage To Impaired Property Or Property Not Physically Injured" exclusion cannot apply here to damage to impaired property, or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in CRX's work. Policies § I.2.m. Contrary to Gemini's characterization of the AOAO's arbitration claims, the PBA Report asserts claims for damage to more than "corrective work" and "punchlist" items that were the result of CRX's work. Damaged property claims are not limited in scope to CRX's "work." Therefore, the "Damage to Property" exclusions relied upon by Gemini do not categorically eliminate the possibility of coverage.

Moreover, as discussed above with respect to the Revised Occurrence Endorsement, the claims here create coverage for property damage other than to

CRX and/or its subcontractors' "work."  The exclusion for "Damage To Your Work" does not apply where the claims transcend those for property damage "to 'your work' arising out of it or any part of it and included in the 'products completed operations hazard.'"  The AOAO's claims arise, at least in part, from "property damage" other than to the "work" of CRX and its subcontractors.  Further, the AOAO's claims in the Underlying Arbitration appear to include instances in which "damaged work or the work out of which the damage arises was performed on [CRX's] behalf by a subcontractor," which is expressly exempted from the exclusion.

In short, Gemini has not carried its burden of establishing that any of these exclusions apply to preclude the possibility of coverage.

### d. <u>Professional Liability Exclusion</u>

The Policies preclude coverage for "any error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of any insured in the conduct of any of the insured's business activities." Ex. J.  CRX did not perform professional services on the Project—rather its work as a general contractor involved primarily physical or manual labor and skills, and the AOAO brings no claims in the Underlying Arbitration against KHA, the Project

architect.   Knox Decl. ¶¶ 3, 7.   The "Professional Liability" exclusion therefore does not apply to claims solely against CRX.

### e.    Punitive Damages Exclusion

Although Gemini correctly asserts that the Policies preclude coverage for "punitive or exemplary damages awarded against the insured," and that such damages are not generally provided for under Hawaii law,[7] the exclusion does not defeat the possibility of coverage based upon the asserted claims for relief in the Underlying Arbitration, which seek remedies beyond punitive damages.

### C.    CRX Is Entitled to Summary Judgment on the Duty to Defend

Because the AOAO's claims in the Underlying Arbitration arise from CRX's own faulty workmanship as well as from damage to property that was not within the scope of CRX's "work," the Revised Occurrence Endorsement creates the possibility of coverage.   Additionally, the Court is unpersuaded that any identified exclusion so clearly applies that Gemini is relieved of the duty to defend.   *See Finley*, 975 P.2d at 1149–50 ("Where a complaint alleges grounds that are both within and without the scope of insurance coverage, the insurer is required to defend the entire action.") (citation omitted).   The possibility for coverage under the

---

[7]Under Hawaii law, "[c]overage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included." HRS § 431:10-240.

Policies remains, and correspondingly, Gemini has a duty to defend CRX in the Underlying Arbitration. Accordingly, the Court grants CRX's Motion and denies Gemini's Motion with respect to the duty to defend.[8]

## II. Gemini's Motion Is Denied Without Prejudice on the Duty to Indemnify

In its Motion, Gemini also seeks a declaration that it has no duty under the Policies to indemnify CRX. The Underlying Arbitration is pending appeal in the Hawaii appellate courts and liability for the claims asserted has yet to be resolved. "The duty to indemnify does not arise until liability is determined." *Kaiser Found. Health Plan, Inc. v. Hawaii Life Flight Corp.*, No. CV 16-00073 ACK-KSC, 2017 WL 1534193, at *22 (D. Haw. Apr. 27, 2017) (citing *Pancakes of Haw., Inc. v. Pomare Properties Corp.*, 85 Hawai'i 286, 292, 944 P.2d 83, 89 (App. 1997) ("Once the trier of fact makes a determination on the claims in the lawsuit, the duty to indemnify will either arise or lie dormant. Claims falling within the indemnity provision will trigger the duty to indemnify, while claims falling outside the provision will relieve the indemnitor of his or her duty to indemnify.")); *W. World*

_____

[8]Because the Court grants CRX's motion with respect to the duty to defend based on the possibility of coverage, it does not reach the alternative grounds raised in that motion, including those relating to the effectiveness of Gemini's reservation of rights. *See, e.g.*, *State Farm Fire & Cas. Co. v. Vogelgesang*, 834 F. Supp. 2d 1026, 1038 (D. Haw. 2011) (explaining that whether an insurer "is estopped from attempting to decline coverage is an affirmative defense that [the insureds] bear the burden of proving") (citing *Cal. Dairies Inc. v. RSUI Indem. Co*., 617 F.Supp.2d 1023, 1048 n.11 (E.D. Cal. 2009) ("To demonstrate waiver, the insured bears the burden of proof to demonstrate that the carrier intentionally relinquished a right or that the carrier's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.")).

*Ins. Co. v. Cty. of Hawaii*, No. CV 05-00742 DAE-LEK, 2008 WL 2073494, at *2 n.1 (D. Haw. May 15, 2008), *aff'd*, 357 Fed.Appx. 795 (9th Cir. 2009) ("the 'duty to indemnify remains speculative until the underlying proceeding against the insured has progressed sufficiently to settle the relevant liability issues'") (quoting *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 894 (9th Cir. 2003) (Ferguson, J., dissenting)).

Gemini's duty to defend depends on the possibility that CRX will incur liability on a covered claim. That possibility exists, and therefore Gemini must defend. Yet, genuine issues of material fact remain as to whether Gemini must indemnify CRX, because the possibility is just that. *See Weight v. USAA Cas. Ins. Co.*, 782 F. Supp. 2d 1114, 1131 (D. Haw. 2011). The Court thus denies without prejudice the premature portion of Gemini's Motion with respect to its duty to indemnify.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Gemini's Motion for Partial Summary Judgment, Dkt. No. 42, and GRANTS ConstRX's Counter-Motion for Partial Summary Judgment Re: Duty to Defend, Dkt. No. 53.

IT IS SO ORDERED.

DATED: September 24, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Gemini Ins. Co. v. ConstRX Ltd.,* CV. NO. 14-00355 DKW-RLP; **ORDER (1) DENYING GEMINI INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) GRANTING CONSTRX LTD.'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DUTY TO DEFEND**

32